KAHN, J.
**443 *1146 The dispositive issue in this appeal is whether the Appellate Court properly concluded that the trial court lacked discretion to refuse to mark records for identification following the court's determination that the defendant, Norman P., had failed to make the requisite showing to require an in camera review of those records. State v. Norman P ., 169 Conn. App. 616, 639-40, 151 A.3d 877 (2016). We conclude that the trial court had no such discretion. This certified[1] **444 appeal arises from the defendant's conviction of three counts of sexual assault in a spousal relationship in violation of General Statutes § 53a-70b, one count of assault of an elderly person in the second degree in violation of General Statutes § 53a-60b, and one count of assault of an elderly person in the third degree in violation of General Statutes § 53a-61a. The state claims that the Appellate Court incorrectly concluded that the trial court had improperly declined to conduct an in camera review of the complainant's privileged records from Interval House, an organization that provides counseling and other services to domestic violence victims, and that the trial court also improperly declined to mark those records for identification. The state additionally challenges the Appellate Court's conclusion that, in declining to admit into evidence the defendant's entire written statement to the police, the trial court misinterpreted § 1-5 (b) of the Connecticut Code of Evidence and our relevant case law applying that rule. We affirm the judgment of the Appellate Court on the basis of our conclusion that the trial court improperly refused to mark for identification the complainant's privileged records from Interval House, and that the court further abused its discretion in declining to review those records in camera. Because the issue is likely to arise on remand, we also address the state's claim that the Appellate Court improperly concluded that the defendant's entire written statement was admissible **445 pursuant to § 1-5 (b). Although we agree with the Appellate Court that the trial court misinterpreted § 1-5 (b) and our relevant case law applying that rule, we disagree that the entire statement should have come into evidence pursuant to that rule. To the contrary, our application of § 1-5 (b) leads us to conclude that only a portion, rather than the entirety, of the defendant's prior statement should have been admitted. *1147 The Appellate Court set forth the following relevant facts, which reasonably could have been found by the jury. "On the evening of Thursday, August 2, 2012, the defendant was at home with the complainant, who was the defendant's sixty-one year old wife, and their twenty year old son, [B], who had a strained relationship with the defendant. A dispute over the operation of the air conditioning system arose between the defendant and [B]. A verbal argument between the two, in which the complainant interceded on [B's] behalf, soon escalated into a physical altercation. Eventually, in an effort to avoid calling the police and possibly having the two men arrested, the complainant told [B] that it would be best if he left the house and went to his grandmother's residence. [B] then left.
"Thereafter, the defendant approached the complainant and, using his closed fist, punched her in the chest with such force that it took her breath away. The complainant punched the defendant back, injuring her shoulder in the process, and the defendant began hitting and jabbing the complainant repeatedly in the midsection with the television remote control, causing the complainant severe bruising. The complainant eventually retreated to the upstairs bedroom where she usually slept, away from the master bedroom where the defendant usually slept.
"Several minutes later, the defendant entered the complainant's bedroom where she was lying down on **446 the bed, pulled the covers off of her, and stated that he was 'going to show [her] something.' He then ripped off the nightgown she was wearing, prompting the complainant to attempt to push and kick him away from her. The complainant was unsuccessful in her efforts, however, because the defendant was physically stronger than her, one of her shoulders had no strength as a result of it having been injured earlier, and the defendant was restraining her other uninjured hand. The defendant then began to insert his finger into the complainant's rectum, and the complainant pleaded with him to stop because he was hurting her. The defendant refused and threatened that the more the complainant protested, the harder he would continue the penetration. The complainant soon realized that the defendant was penetrating her with more than one finger and that he was also curling his fingers inside of her, like a hook, pulling at her. At some point during the assault, the complainant saw that she was emitting blood and feces onto the bedsheet.
"After a period of time, the defendant directed the complainant to go to the bathroom to wash herself off. He then walked her into the bathroom and to the bathtub, all the while refusing to remove his finger from her rectum. Filling the tub with water and directing the complainant to get in, the defendant proceeded to remove his own clothing and enter the tub with her. The defendant then pulled the complainant onto his lap and began to manipulate a bar of soap into her rectum, although the complainant did not know this at the time because she could not see what he was doing behind her. Consumed with pain, the complainant kept trying to remove the defendant's hand from her rectum, but was unable to overcome his strength. Eventually, the complainant complained that her stomach was cramping and that she needed to move her bowels, so the defendant released her and allowed her to sit on the **447 toilet. In addition to emitting blood and feces, the complainant expelled the bar of soap into the toilet, thereby realizing for the first time that he had pushed the soap inside of her.
"Afterward, the defendant led the complainant back into the complainant's bedroom, *1148 and the complainant, overcome with exhaustion, could not attempt to fight him any longer. The defendant proceeded to lean the complainant over the bed and penetrate her rectum with his penis and fingers. After the defendant stopped the assault, he fell asleep on the bed, and the complainant lay crying on the floor.
"Eventually, near daylight, the complainant got up, got dressed, and began wandering on foot around the streets in her neighborhood. The complainant attempted to telephone a friend of hers and a friend of the defendant, but neither answered, so the complainant called the defendant's brother, and told him about the assault. At some point while she was walking, the complainant felt 'a gush [of wetness] come down in [her] pants' and, after returning to the house, discovered that she had had an involuntary bowel movement that was mixed with blood and 'white stuff,' which she assumed was from the bar of soap. She cleaned herself off and lay down on the couch in the basement until it was time for her to go to work in the afternoon.
"Although the complainant had difficulty walking because of her injuries, she went to work that Friday, Saturday, and Sunday because she did not want to be alone in the house with the defendant. On Monday evening, the complainant confided in her close friend and coworker about the assault, and accepted the friend's invitation to stay the night at her house. The next day, on Tuesday, the complainant saw her primary care physician, told him of her injuries, and informed him that they had been the result of an assault by the defendant.
**448 The [physician] diagnosed the complainant with a rectal tear and ... referred her to Interval House for counseling.
"On Thursday, almost one week after the assault, the complainant took her car to a shop to be serviced. While at the service shop, the complainant experienced another involuntary bowel movement and decided at that point that she would report the assault to the police. The complainant then drove straight from the service shop to the police station, where the authorities took her statement and, thereafter, accompanied her to her home to collect evidence. When the defendant arrived home from work that day, he encountered the police outside his house. Upon request, he followed a police detective to the police station. During an interview with the detective, he gave a sworn written statement concerning the events that occurred on August 2 and 3, 2012. The following day, the defendant was arrested pursuant to an arrest warrant." Id., at 619-22, 151 A.3d 877. Following the trial, the defendant was convicted of all but two of the counts. He was sentenced to a total effective term of thirty-six years of imprisonment, execution suspended after twenty-four years, with ten years of probation. Id., at 623, 151 A.3d 877. The defendant appealed from the judgment of conviction to the Appellate Court.
The Appellate Court concluded that the trial court misapplied the applicable law in denying the defendant's motion to introduce his entire statement to the police after the state had introduced portions of the statement during its cross-examination of the defendant. Id., at 623, 151 A.3d 877. Specifically, the Appellate Court concluded that the trial court relied on an incorrect interpretation of this court's decision in State v. Jackson , 257 Conn. 198, 777 A.2d 591 (2001), for the proposition that when an opposing party has introduced portions of a statement, the remainder of a statement is not admissible pursuant to **449 § 1-5 (b) of the Connecticut Code of Evidence if the remainder is comprised of " 'self-serving hearsay.' " *1149 State v. Norman P. , supra, 169 Conn. App. at 627, 630, 151 A.3d 877. Applying de novo review, the Appellate Court concluded that the entire statement was necessary to place the portions introduced by the state into the proper context, and, therefore, the trial court improperly refused to admit the complete statement. Id., at 632-33, 151 A.3d 877. The court also concluded that the error was harmful. Id., at 634, 151 A.3d 877. Accordingly, the Appellate Court reversed the judgment of conviction and remanded the case for a new trial. Id., at 644, 151 A.3d 877. Because the issue was likely to arise on remand, the Appellate Court also considered the defendant's claims concerning the Interval House records. Id., at 635, 151 A.3d 877. The Appellate Court concluded that the trial court improperly refused to mark those records for identification and that the court further abused its discretion in declining to review those records in camera. Id., at 640, 644, 151 A.3d 877. This appeal followed. Additional facts and procedural history will be set forth as necessary.
I
We first address the issue of whether the Appellate Court properly concluded that the trial court lacked discretion to refuse to mark the Interval House records for identification following the court's determination that the defendant had failed to make the requisite showing to require an in camera review of those records. The state concedes that the trial court improperly declined to mark the records for identification, but argues that, because the defendant did not make the requisite showing to require an in camera review, the failure to mark the records constituted harmless error. We conclude, to the contrary, that the Appellate Court properly concluded that the defendant's threshold showing triggered the trial court's duty to conduct an in camera review of the records. Most significantly for purposes of this appeal, however, because the trial **450 court improperly failed to mark the records for identification-which it was required to do regardless of its resolution of the defendant's motion for an in camera review-this court is prevented from conducting its own review of the records. We are therefore unable to assess whether the trial court's error in declining to conduct that review was harmless.
The following additional facts are relevant to the resolution of this issue. When the complainant's physician, Michael Fischer, examined her on August 7, 2012, following the alleged assault, he referred her to Interval House for counseling. While the complainant was still at Fischer's office, she telephoned Interval House and spoke to someone there. Because the Interval House records document privileged communications between a victim of sexual assault and a sexual assault counselor, the defendant filed a pretrial motion seeking an in camera review of the records pursuant to General Statutes § 52-146k.
The trial court heard argument on the defendant's motion on December 5, 2014. At that time, the defendant alleged that the complainant provided different accounts of the assault to Fischer and to the police and that those differences supported his claim that the Interval House records likely contained impeachment material. Specifically, the defendant, relying on the complainant's medical records and the police reports, claimed that the complainant had not told Fischer about the soap but had provided that information to the police. Because of the inconsistencies between the two accounts, the defendant contended that the Interval House records likely contained impeachment material. Specifically, he argued that the information that the complainant provided to that organization would have to differ either *1150 from the account the complainant gave to the police or the one she gave to Fischer. The trial court denied the motion without prejudice, subject to **451 renewal following the defendant's cross-examination of both the complainant and her physician.
On December 10, 2014, after the complainant testified, but before Fischer testified, the defendant renewed his request for an in camera review of the Interval House records. The defendant relied generally on the complainant's testimony, claiming that there had been "a lot of testimony [that was] conflicting from the complainant ...." He also reiterated his argument that the information that the complainant provided to Interval House likely would contain additional inconsistencies with which he could impeach the complainant. The trial court denied the motion on the basis that the defendant had not made an adequate showing that he was entitled to an in camera review of the records. When the defendant requested that the records be marked for identification-specifically for the purpose of ensuring an adequate record for appeal-the court responded that it would not, because it had never reviewed the records.
We begin with the Appellate Court's conclusion that the trial court improperly refused to mark the Interval House records for identification. State v. Norman P. , supra, 169 Conn. App. at 640, 151 A.3d 877. It is beyond dispute that the trial court lacks discretion to refuse to mark for identification an exhibit for which an in camera review has been requested, regardless of whether the court reviews the records. "A trial court has the absolute duty to mark for identification and seal for possible appellate review any such records offered, whether or not an in camera inspection is undertaken, even in the absence of an objection to its failure to do so from the parties." State v. Bruno , 236 Conn. 514, 538, 673 A.2d 1117 (1996). This court has characterized the refusal to mark such records as "manifest error" and has explained that "to allow such discretion would permit a trial judge to deprive an aggrieved party of a proper record for an appeal."
**452 Duncan v. McTiernan , 151 Conn. 469, 470, 199 A.2d 332 (1964) ; see also C. Tait & E. Prescott, Connecticut Evidence (4th Ed. 2008) § 1.29.3, p. 75.
In the present case, the Appellate Court properly concluded that the trial court did precisely what this court has expressly stated it lacked discretion to do. When the trial court refused to conduct an in camera review of the Interval House records, the defendant properly requested that they be marked for identification, consistent with his duty to ensure an adequate record for appeal. The trial court refused to do so. In his motion for a new trial, the defendant renewed his request to have the records marked for identification. He relied on this court's decision in State v. Bruno , supra, 236 Conn. at 538, 673 A.2d 1117, for the proposition that the trial court had an absolute duty to mark the Interval House records for identification. At the defendant's sentencing hearing, the court denied the motion for a new trial and refused to reconsider its ruling declining to mark the records for identification, despite the court's acknowledgment that it had reviewed this court's decision in Bruno .[2]
*1151 Finally, we conclude that the Appellate Court properly concluded that the trial court abused its discretion in declining to conduct an in camera review of the Interval House records. State v. Norman P ., supra, 169 Conn. App. at 640-44, 151 A.3d 877. The defendant made the requisite showing to obtain review.
"Generally, a trial court has some discretion in the matter of discovery where material is sought for **453 impeachment purposes.... If, however, the claimed impeaching information is privileged there must be a showing that there is reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation such that the witness' direct testimony should be stricken. Upon such a showing the court may then afford the state an opportunity to secure the consent of the witness for the court to conduct an in camera inspection of the claimed information and, if necessary, to turn over to the defendant any relevant material for the purposes of cross-examination. If the defendant does make such showing and such consent is not forthcoming then the court may be obliged to strike the testimony of the witness. If the consent is limited to an in camera inspection and such inspection, in the opinion of the trial judge, does not disclose relevant material then the resealed record is to be made available for inspection on appellate review. If the in camera inspection does reveal relevant material then the witness should be given an opportunity to decide whether to consent to release of such material to the defendant or to face having her testimony stricken in the event of refusal." (Citation omitted.) State v. Esposito , 192 Conn. 166, 179-80, 471 A.2d 949 (1984). This court has observed that the trial court should allow defendants " 'a certain latitude' " in determining whether they have made the requisite preliminary showing to obtain an in camera review. State v. Bruno , supra, 236 Conn. at 531, 673 A.2d 1117 ; see also C. Tait & E. Prescott, supra, § 6.16.3, p. 320.
Applying this standard, we conclude that the Appellate Court properly determined that the defendant made the required showing. State v. Norman P ., supra, 169 Conn. App. at 642, 151 A.3d 877. In light of the inconsistencies between the accounts that the complainant gave to the police and to Fischer, and in light of the fact that her telephone call to Interval House was prompted by Fischer's referral;
**454 id., at 636-37, 151 A.3d 877 ; the defendant established that there was "reasonable ground to believe that the failure to produce the information is likely to impair the defendant's right of confrontation ...." State v. Esposito , supra, 192 Conn. at 179, 471 A.2d 949. The Appellate Court properly concluded that the trial court abused its discretion in refusing to conduct an in camera review of the Interval House records. Due to the trial court's failure to mark the records for identification, however, we are unable to assess whether the defendant was harmed by the error. Accordingly, the defendant is entitled to a new trial.
II
Because it is likely to arise on remand, we next address the state's claim that the Appellate Court improperly concluded that the trial court, in refusing to allow the defendant to introduce his entire prior statement to the police, relied on an incorrect reading of State v. Jackson , supra, 257 Conn. at 198, 777 A.2d 591, which discussed § 1-5 (b) of the Connecticut Code of Evidence. The state claims that the Appellate Court improperly concluded that the trial court rested its ruling on a *1152 misreading of this court's interpretation of § 1-5 (b) in Jackson . Instead, the state argues, the trial court looked to Jackson only for the principles governing the admissibility of prior consistent statements to rehabilitate a witness who has been impeached with prior inconsistent statements. Our review of the record confirms that the Appellate Court correctly characterized the legal basis of the trial court's ruling. We also agree with the Appellate Court's conclusion that the trial court misstated the applicable legal rule. State v. Norman P ., supra, 169 Conn. App. at 630, 151 A.3d 877. Our review of the record persuades us, however, that the proper application of § 1-5 (b) required only a portion of the statement to be admitted and not the entire statement, as the Appellate Court concluded. Id., at 634, 151 A.3d 877. **455 We begin by setting forth the applicable standard of review. Because the question presented in this appeal turns on the trial court's interpretation of the application of § 1-5 (b) of the Connecticut Code of Evidence in Jackson , we review de novo the question of whether § 1-5 (b) required that the entire statement be admitted. We have explained that, "[t]o the extent [that] a trial court's [ruling regarding] admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no judgment call by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility." (Internal quotation marks omitted.) State v. Saucier , 283 Conn. 207, 218, 926 A.2d 633 (2007). "We review the trial court's decision [whether] to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." Id.
The following procedural facts reveal that the Appellate Court properly concluded that the trial court relied on a misinterpretation of Jackson and § 1-5 (b) of the Connecticut Code of Evidence in refusing the defendant's proffer of his entire statement into evidence. In first proffering the entire statement, defense counsel argued that, although the state had relied on the statement to point out inconsistencies between it and the defendant's testimony on direct examination, when viewed in its entirety, the statement was actually a prior consistent statement. The state countered that its reliance on the portions of the defendant's statement that were inconsistent with his trial testimony entitled the defendant to introduce only portions of the statement-specifically, **456 prior consistent statements that rebutted the state's reliance on the defendant's inconsistent statements. In this initial discussion of the defendant's proffer, neither party cited to any specific decision of this court or to any provision of the Connecticut Code of Evidence. Defense counsel merely stated generally that he believed that case law supported the introduction of the entire statement "in order to rehabilitate a witness who has been impeached by [an] allegedly inconsistent statement." The court then allowed a short break in order for defense counsel to assemble his argument and case citations.
When the court resumed after the short recess, defense counsel provided the court and the state with two decisions in support of his proffer of the entire statement: State v. Jackson , supra, 257 Conn. at 198, 777 A.2d 591, and State v. Hines , 243 Conn. 796, 709 A.2d 522 (1998). The state argued *1153 that Hines was inapplicable and that it appeared that the decision had been overruled. But see State v. Norman P ., supra, 169 Conn. App. at 627 n.7, 151 A.3d 877. The trial court rested its ruling on Jackson and suggested that it interpreted that decision and the defendant's reliance on it to pertain to the admissibility of prior consistent statements after a witness has been impeached by a prior inconsistent statement. The court further read Jackson to preclude such prior consistent statements if the balance of the proffered statement consisted of self-serving hearsay. The court observed that, during the redirect examination, defense counsel had already elicited testimony from the defendant regarding some prior consistent statements that he had made in his statement to the police. The court therefore refused the defendant's request to have the entire written statement admitted into evidence. The court suggested that defense counsel could elect to discuss with the state which portions of the defendant's statement **457 he sought to offer, and the parties could agree on redactions of inadmissible portions of the statement.
Defense counsel then clarified that his argument was that the entire written statement was admissible pursuant to § 1-5 (b) of the Connecticut Code of Evidence. In support of the proffer, defense counsel reiterated that, when viewed in its entirety, the statement was consistent with the defendant's testimony during direct examination. He claimed that having access to the entire written statement would allow the jurors to see what the police asked the defendant, why he said certain things and not others in response to the questions asked of him, and to understand the context of the portions of the statement that were introduced by the state during his cross-examination. Defense counsel offered no explanation as to how the entire written statement, which was in narrative form, would reveal which questions the police asked the defendant or how it would clarify why he said some things and not others. The trial court did not change its ruling.
The Appellate Court properly concluded that the trial court's ruling was premised on a misunderstanding of this court's application of § 1-5 (b) of the Connecticut Code of Evidence in Jackson . Contrary to the trial court's explanation of Jackson , in that decision, this court interpreted § 1-5 (b) and applicable decisions of this court to require the admission of the remainder of a statement, if the remainder is necessary to provide context for the already admitted portions of the statement, regardless of whether the remainder is otherwise admissible. State v. Jackson , supra, 257 Conn. at 213, 777 A.2d 591. In Jackson , this court rejected the defendant's claim that the trial court improperly admitted into evidence a redacted version of his statement to the police rather than the entire statement. Id., at 211-12, 777 A.2d 591. Just as in the present case, the defendant in Jackson merely relied on a conclusory assertion to support his claim that the **458 entirety of the statement should be admitted pursuant to § 1-5 (b). Specifically, he claimed that the trial court was required to admit the balance of the statement because it would demonstrate that he was not a " 'consummate storyteller.' " Id., at 214, 777 A.2d 591. In rejecting the defendant's claim, this court reviewed the balance of his statement to the police to determine whether the trial court had properly concluded that the redacted statement had not been "taken out of context" and did not "give a distorted view in the absence of the balance of the statement." (Internal quotation marks omitted.) Id., at 213 n.17, 214, 777 A.2d 591. Following that review, this court concluded that the remainder of the statement "was not relevant in providing *1154 meaning and coherence to the admitted portion." Id., at 214, 777 A.2d 591.
The trial court in the present case appears to have focused on a brief discussion in Jackson on the inadmissibility of a statement that consists of self-serving hearsay. The trial court appears to have taken a discussion of that issue in Jackson out of context. Specifically, in Jackson , the court first addressed the question of whether the proffered remainder of the defendant's statement was necessary to provide context for the initial portions that had been introduced by the state. Id., at 214, 777 A.2d 591. After answering that question in the negative; id., at 214-15, 777 A.2d 591 ; the court addressed and rejected an alternative argument advanced by the defendant, namely, that the trial court improperly had determined that the remainder of the statement was inadmissible hearsay. Id., at 215, 777 A.2d 591. The Appellate Court properly concluded that the trial court in the present case incorrectly interpreted the discussion of this remaining issue in Jackson -whether the remainder constituted inadmissible hearsay-to constitute this court's application of § 1-5 (b) of the Connecticut Code of Evidence. State v. Norman P ., supra, 169 Conn. App. at 630, 151 A.3d 877. As the Appellate Court properly observed, that interpretation not only is inconsistent **459 with a reasonable reading of Jackson , but also runs directly counter to the express language of § 1-5 (b), which requires the trial court to admit the remainder of a statement, when necessary to provide context, " 'whether or not otherwise admissible ....' " (Emphasis omitted.) Id., at 630, 151 A.3d 877 ; see Conn. Code Evid. § 1-5 (b).
Section 1-5 (b) of the Connecticut Code of Evidence provides: "When a statement is introduced by a party, another party may introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered with it." We have stated that the purpose of the rule is " 'to ensure that statements placed in evidence are not taken out of context.' " State v. Jackson , supra, 257 Conn. at 213, 777 A.2d 591. We have further explained that the rule's purpose "also demarcates [its] boundaries; a party seeking to introduce selected statements under the rule must show that those statements are, in fact, relevant to, and within the context of, an opponent's offer and, therefore, are part of a single conversation." (Internal quotation marks omitted.) Id. In other words, the remainder of a statement is admissible pursuant to § 1-5 (b) if the rest of the statement is necessary in order to place the initial portion in context.
The dictionary definition of the term "context" is: "[T]he weaving together of words in language ... [t]he part or parts of a written or spoken passage preceding or following a particular word or group of words and so intimately associated with them as to throw light upon their meaning ...." (Emphasis added.) Webster's Third New International Dictionary (2002) p. 492. An excerpt from a passage is taken out of context when the meaning of the excerpt is somehow distorted or made incomplete by the omission of the entire passage. " 'The fool hath said in his heart, there is no God,'
**460 where only the last phrase is quoted, is [John Henry] Wigmore's classic example of the possibilities of distortion." (Footnote omitted.) 1 K. Broun, McCormick on Evidence (7th Ed. 2013) § 56, p. 392.
In accordance with these principles, when a portion of a statement introduced by a party has been taken out of context such that it distorts the meaning of the entire statement and could mislead the *1155 jury, § 1-5 (b) of the Connecticut Code of Evidence requires that the relevant remainder be admitted-even if that remainder would otherwise be inadmissible. We have relied on a useful inquiry in determining whether § 1-5 (b) requires the admission of a remainder of a statement: does the remainder "alter the context" of the already introduced portion of the statement? State v. Castonguay , 218 Conn. 486, 497, 590 A.2d 901 (1991). The nature of the question suggests a practical approach to applying § 1-5 (b) : identify which portions of the statement were initially introduced into evidence, set forth the argument of the party proffering the remainder as to how the partial introduction distorts the meaning of the whole, then juxtapose that initial offering with the remainder. If the addition of the remainder would alter the meaning of the initial offering-or, in other words, would demonstrate that the initial portion was taken out of context-then § 1-5 (b) requires that the remainder be admitted into evidence. This court followed precisely this approach in Jackson , in which the court first considered which portions of the statement had been admitted, identified the defendant's argument as to why the remainder was necessary to provide context, then juxtaposed the initial offering with the remainder of the statement and concluded that the original portions had not distorted the meaning of the entire statement. State v. Jackson , supra, 257 Conn. at 214, 777 A.2d 591.
We therefore begin by identifying which portions of the statement the state introduced during its cross-examination **461 of the defendant.[3] During its examination, the state used the defendant's prior statement to the police to impeach his credibility and cast doubt on his testimony during direct examination. That is, the state explored in detail what the defendant told the police in the written statement he gave on August 9, 2012, and highlighted the inconsistencies between his account to the police and his testimony at trial.[4] For example, in his prior statement to the police, the defendant stated that after B had left the house, the defendant *1156 had "vaginal **462 intercourse" with the complainant. During his direct examination, however, the defendant testified that although he had attempted to have vaginal intercourse with the complainant, he was unable to maintain an erection. He testified during cross-examination that he had not had vaginal intercourse at all with the complainant, and instead had digitally penetrated her anus.
Pursuing this strategy of highlighting various inconsistencies between the defendant's testimony during direct examination and the claims he made in his statement to the police, the state elicited testimony from the defendant that, in his statement, he told the police that (1) B hit the defendant with a baseball bat during the altercation on Thursday, August 2, 2012, (2) the complainant intervened in the struggle between the defendant and B, (3) the defendant and the complainant had vaginal intercourse on the night of the alleged assault, (4) after vaginal intercourse, he went to the bathroom to look for a "bar of soap," (5) while he was digitally penetrating her anus, the complainant told him to stop, so he stopped,[5] (6) he saw blood on the sheets on the bed, (7) the complainant then went to the toilet, and he accompanied her to the bathroom, (8) he did not know whether the soap came out of her while she was sitting on the toilet, and (9) the complainant was working from Thursday, August 2 through Sunday, August 5, 2012.
On redirect examination, defense counsel focused primarily on addressing the inconsistencies between the defendant's direct examination testimony and what he failed to tell the police in his prior statement. Defense counsel sought to demonstrate that the omissions in the defendant's statement were due to a combination **463 of factors, including his mistaken belief that the police were investigating B rather than the defendant, the short duration of the interview, the absence of specific questions that would have prompted him to supply additional information, and the detective's inaccurate transcription of the defendant's words. In order to effect this strategy, defense counsel questioned the defendant regarding some portions of his statement that the state had focused on during cross-examination. He also introduced portions of the defendant's statement that were consistent with his direct examination testimony. After defense counsel had successfully introduced some prior consistent statements from the defendant's statement to the police, he proffered the entire written statement as a full exhibit, claiming that it was admissible pursuant to § 1-5 (b) of the Connecticut Code of Evidence. As we have explained, the reasons that defense counsel offered in support of the admissibility of the entire written statement were that it would provide context by revealing which specific questions were asked to the defendant and why he said some things and not others. He also made the conclusory assertion that, when viewed as a whole, the statement was consistent with the defendant's testimony on direct examination.
The defendant's argument-that admission of the entire statement was necessary to disclose the questions that he was asked and the reasons he included some information and omitted other information-lacks merit both factually and legally under *1157 § 1-5 (b) of the Connecticut Code of Evidence. We first observe that nothing in the defendant's narrative statement to the police reveals what questions the police asked the defendant or the defendant's reasons for providing some details regarding the assault but omitting other details.[6] Second, the defendant's reliance on the state's **464 questions about the omissions in his statement reflects a basic misunderstanding of what is required to trigger the application of § 1-5 (b). In order for that rule to apply, a portion of a statement must be introduced into evidence. Questions regarding what a witness did not say in a prior statement do not introduce any portion of the statement. See footnote 3 of this opinion.
As to the defendant's broad claim that, when viewed as a whole, the statement is consistent with his testimony on direct examination, we disagree. Some portions of the statement are consistent with his direct examination testimony. Others, highlighted by the state during cross-examination, are not. Our review of his statement, however, does reveal that one statement elicited by the state during the defendant's cross-examination was arguably taken out of context. Specifically, during cross-examination, the state elicited testimony from the defendant concerning his statement that he went to the bathroom to look for a "bar of soap ...." In the defendant's statement, however, he not only used the phrase "bar of soap," but also referred to a "used bar of soap." The latter phrase is consistent with the defendant's testimony that he inserted a "piece of soap" into the complainant's anus. It is at least arguable that the jury could have interpreted the reference to a "bar of soap" in the defendant's statement to mean an unused bar of soap. Accordingly, the portion of the defendant's statement referring to a "used bar of soap" would be admissible pursuant to **465 § 1-5 (b) of the Connecticut Code of Evidence to provide proper context.[7] We therefore conclude that the trial court improperly refused to permit the introduction of that portion of the statement into evidence.
The judgment of the Appellate Court is affirmed.
In this opinion the other justices concurred.

We granted the state's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the trial court misapplied State v. Jackson , 257 Conn. 198, 777 A.2d 591 (2001), to a claim of admissibility under § 1-5 (b) of the Connecticut Code of Evidence ?" (2) "If the answer to the first question is in the affirmative, did the Appellate Court correctly determine that the defendant demonstrated that the trial court error was harmful?" (3) "Did the Appellate Court properly conclude that the defendant was entitled to an in camera review of the [complainant's] privileged records from a sexual abuse treatment center?"State v. Norman P. , 324 Conn. 910, 910-11, 153 A.3d 654 (2017).
In his brief to this court, the defendant argued that because the state made no argument in the Appellate Court-either in its brief or during oral argument-that any error in the trial court's application of § 1-5 (b) was harmless, the state has waived the second certified issue. Because the resolution of this appeal rests on the third certified issue, and because we address the proper application of § 1-5 (b) only for purposes of remand, it is unnecessary for us to address the second certified issue. It is therefore also unnecessary for us to address the defendant's argument that the state waived that issue.

We find the trial court's refusal to follow this court's decision in Bruno troubling. As we have observed, it is not debatable that the trial court lacks discretion to mark for identification records for which an in camera review has been requested, regardless of whether the court actually conducts the requested review. The trial court's refusal to abide by that rule improperly has prevented this court from being able to determine whether the trial court's refusal to conduct an in camera review of the Interval House record was harmless error.

Because § 1-5 (b) of the Connecticut Code of Evidence does not expressly limit its scope to written statements, we construe the term "introduced," as used in § 1-5 (b), broadly, to include the introduction of portions of a statement through the testimony of a witness. This construction is consistent with our past decisions. See, e.g., State v. Paulino , 223 Conn. 461, 465-66, 613 A.2d 720 (1992) (suggesting, without expressly considering, that rule of completeness applied when initial "introduction" was solely through testimony regarding statement to police); Rokus v. Bridgeport , 191 Conn. 62, 68-69, 463 A.2d 252 (1983) (same); see also C. Tait & E. Prescott, supra, § 1.28.2, pp. 71-73.
Our broad construction of the meaning of the term "introduced" in § 1-5 (b) to include portions of a statement introduced solely through the testimony of a witness necessitates an important clarification. When the initial portions of the statement have been elicited through the testimony of a witness, that introduction must be accomplished through testimony by the witness that affirmatively represents that he made a particular assertion in the prior statement. For example, in the present case, the defendant testified during cross-examination that, in his statement to the police, he said that he had engaged in vaginal intercourse with the complainant on the night of the assault. That testimony introduced that portion of the statement into evidence because the defendant testified that he said it. By contrast, testimony of the witness regarding what he did not say in a prior statement obviously does not introduce any portion of that statement into evidence. We therefore reject the defendant's suggestion that his testimony regarding the omissions in his statement to the police in any way triggered the application of § 1-5 (b). Nor is any portion of a prior statement introduced pursuant to § 1-5 (b) when a witness simply denies making a particular assertion in the prior statement.

Although the state also relied on the contrast between the details that were included in the defendant's testimony on direct examination but were excluded in his statement to the police, those questions and resulting testimony are not relevant to our inquiry. As we have explained, that line of questioning did not introduce any portion of the defendant's statement into evidence.

Despite the defendant's admissions in his statement that he caused the complainant's injuries, he did not inform the police, as he later testified, that he believed that those injuries were due to a deformity in one of his fingers.

Because the statement is in narrative form, we also disagree with the Appellate Court's conclusion that the brevity of the statement "might have caused the jury to credit the defendant's testimony as to why his statement to the police was missing certain details to which he testified at trial ...." (Emphasis added.) State v. Norman P. , supra, 169 Conn. App. at 631, 151 A.3d 877. The length of the statement reveals nothing about how long the interview took, what questions the detective asked the defendant, or whether the defendant confined his answers strictly to the scope of the questions that the detective asked him. We also observe that if defense counsel had wished to highlight the short duration of the interview or the brevity of the statement, he was free to ask the defendant questions to elicit those facts. He did not do so.

Our application of § 1-5 (b) of the Connecticut Code of Evidence, and our conclusion that the phrase "used bar of soap" is admissible pursuant to that rule, is necessarily dependent on the procedural facts as they evolved during the defendant's first trial. We recognize that, if the defendant is retried, the parties may well pursue different lines of questioning, with the result that different portions of the defendant's statement to the police may be introduced into the record. Those differences, of course, must be taken into account by the trial court should either party rely on § 1-5 (b) to introduce the balance of the defendant's statement on the basis that the opposing party introduced a portion of it out of context.