******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* RICKIE
LAMONT KNOX
(AC 41168)
(AC 41644)

Alvord, Alexander and Harper, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of criminal possession of a firearm
in connection with the shooting death of the victim, and with being a
persistent serious felony offender, the defendant appealed to this court.
The victim and some friends argued outside a cafe with another group
that included the defendant. At some point, the defendant withdrew a
handgun. The victim appeared to reach for a gun in his waistband and
the defendant shot the victim, who fell to the ground injured. The victim
discharged his gun while on the ground. The defendant then fled the
scene with his gun. The victim later died as a result of his injuries.
Approximately one month after the incident, the defendant was arrested
and was briefly interviewed by a detective, B, before invoking his right
to counsel, ending the interview. The next day, the defendant informed
another officer that he wanted to speak with B. During this second
interview, B informed the defendant of his *Miranda* rights (384 U.S.
436). The defendant expressly stated that he understood and waived
these rights. During the course of the second interview, the defendant
admitted to being outside the cafe at the time of the shooting. Certain
statements made by the defendant during his second interview with B
were admitted into evidence. After a jury trial, the defendant was found
guilty of criminal possession of a firearm and tampering with physical
evidence and with being a persistent serious felony offender. Thereafter,
the trial court granted the defendant's motion for judgment of acquittal
as to the charge of tampering with physical evidence, and the state, on
the granting of permission, appealed to this court. *Held*:
1. The trial court properly granted the defendant's motion for a judgment
of acquittal with respect to the charge of tampering with physical evi-
dence, as no reasonable trier of fact could have found the defendant
guilty; the state presented insufficient evidence that the defendant
intended to impair the availability of his gun in a subsequent criminal
investigation, there having been no evidence regarding the defendant's
intent, apart from the evidence that, after shooting the victim, the defen-
dant left the scene with the gun; moreover, the state's claim that it could
rely on the defendant's prior felony conviction to support a finding that
the defendant had removed the gun from the scene to avoid a charge of
criminal possession of a firearm and, therefore, tampered with physical
evidence, was unavailing, as evidence of that conviction had been admit-
ted by stipulation only for the limited purpose of establishing an element
of the crime of criminal possession of a firearm.
2. The defendant could not prevail on his claim that his statements made
to the police during the second interview should have been excluded
because he made an ambiguous request for counsel that required the
police to stop the interview and clarify this request pursuant to *State*
v. *Purcell* (331 Conn. 318); the defendant's explanation to B that he had
changed his mind about speaking with the police because a lawyer had
not come to see him after the first interview and he felt "left for dead,"
would not have caused a reasonable officer to construe that explanation
as an ambiguous request for counsel as that statement did not contain
any of the conditional or hedging terms that have been deemed ambigu-
ous or equivocal invocations of that right, and the defendant made no
clear and unequivocal request for an attorney; moreover, the conclusion
that the defendant's explanation was not a request for counsel was
supported by the circumstances of the two interviews, including, at
outset of the second interview, the defendant's indication that he did
not want to be recorded, his expressed concern for his safety, and
his reluctance to identify certain individuals involved in other criminal
activity, and, at the first interview, the defendant, who B knew to have
been involved in previous criminal matters, had unambiguously invoked

his right to counsel, which resulted in the termination of that interview.

3. The trial court did not abuse its discretion in making its evidentiary ruling regarding the admission of certain portions of B's interview with the defendant: the court's decision to admit only that portion of the interview in which the defendant identified himself in a photograph taken from a surveillance video on the night of the shooting and to not admit the portion the defendant sought to introduce in which he identified another man in the photograph as the shooter did not violate the applicable rule (§ 1-5) of the Connecticut Code of Evidence because the evidence the defendant sought to introduce did not change or alter the fact that he identified himself as present at the scene and would not demonstrate that the portion of the interview that was introduced had been taken out of context; moreover, the defendant failed to establish that the court's evidentiary rulings violated his constitutional rights to due process and to present a complete defense.

Argued September 9—officially released November 24, 2020

*Procedural History*

Two part substitute information charging the defendant, in the first part, with the crimes of murder, criminal possession of a firearm, and tampering with physical evidence and, in the second part, with being a persistent serious felony offender, brought to the Superior Court in the judicial district of Waterbury, and tried to the jury before *Alander, J.*; verdict of guilty of criminal possession of a firearm, tampering with physical evidence, and with being a persistent serious felony offender; thereafter, the court granted the defendant's motion for a judgment of acquittal as to the charge of tampering with physical evidence; subsequently, the court, *Alander, J.*, rendered judgment of guilty of criminal possession of a firearm and enhanced the defendant's sentence for being a persistent serious felony offender, from which the state, on the granting of permission, and the defendant filed separate appeals to this court. *Affirmed.*

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Terence Mariani* and *Elena Palermo*, senior assistant state's attorneys, for the appellant in Docket No. AC 41168 (state).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Terence Mariani*, senior assistant state's attorney, for the appellee in Docket No. AC 41644 (state).

*Erica A. Barber*, assigned counsel, for the appellant in Docket No. AC 41644 and the appellee in Docket No. AC 41168 (defendant).

*Opinion*

ALEXANDER, J. This case involves two separate appeals. First, in the appeal in Docket No. AC 41168, the state appeals from the decision of the trial court granting the motion for judgment of acquittal filed by the defendant, Rickie Lamont Knox, with respect to the charge of tampering with physical evidence in violation of General Statutes § 53a-155. The state contends that sufficient evidence existed to support this conviction. Second, in the appeal in Docket No. AC 41644, the defendant appeals from the judgment of conviction, rendered after a jury trial, of criminal possession of a firearm in violation of General Statutes § 53a-217. The defendant contends that his postarrest statements to the police had been obtained following a violation of the prophylactic rule created by our Supreme Court in *State* v. *Purcell*, 331 Conn. 318, 203 A.3d 542 (2019), and, therefore, should have been excluded from evidence. The defendant also argues that the court abused its discretion and violated his constitutional rights by admitting into evidence certain inculpatory portions of his police interview while excluding related contextual portions. We affirm the judgment of the trial court.

The following facts, as the jury reasonably could have found, and procedural history are necessary for the resolution of these appeals. On October 17, 2015, Isaiah James spent the day socializing with the decedent, Anthony Crespo, at the decedent's apartment. At some point that night, two other individuals, Ismail Abdus-Sabur and Timothy Minnifield, joined James and the decedent. After consuming all of the alcohol at the decedent's apartment, the group walked to the Barley Corn Cafe (cafe) around 1 a.m. on October 18, 2015. James and the decedent attempted to enter the cafe while the other two men, who were under the age of twenty-one, waited outside. After being denied entry into the cafe, James "bumped" into another man standing outside, and a brief verbal disagreement ensued. James then walked over to Abdus-Sabur and Minnifield. An individual, who the state argued was the defendant, then placed his hand, positioned to resemble a gun, to James' head, and cautioned him to "[w]atch [his] ass . . . ."

After being threatened, James spoke with the decedent. James turned around and realized that there was "a group of guys around [them]." The decedent began to argue with this group. The defendant, standing directly in front of the decedent, drew a handgun from his waistband. The decedent appeared to reach for a gun in his waistband. The defendant shot the decedent, who fell to the ground, injured.[1] The decedent discharged his gun while on the ground. The defendant then fled the scene.

Edward Bergin, the owner of the cafe, came outside

and was directed to the decedent, who remained on the ground. Bergin overheard the decedent ask Edwin Melendez to retrieve the decedent's gun from under a nearby parked motor vehicle. Melendez looked under the motor vehicle, grabbed the decedent's gun and placed it in his vehicle. Bergin relayed this information regarding the relocating of the decedent's gun to Brian Brunelli, a Waterbury police officer who had been dispatched to the cafe.

Brunelli observed a small hole in the center of the decedent's chest. The decedent's gun was recovered from Melendez' vehicle. While on the ground outside of the cafe, the decedent informed Brunelli that he could neither breathe nor feel his legs. Medical personnel transported the decedent to the hospital, where he died soon thereafter.[2]

Joe Rainone, a Waterbury police lieutenant, processed the crime scene where the police recovered three firearm cartridges: a fired nine millimeter cartridge, an unfired .45 caliber cartridge, and a fired .45 caliber cartridge, which later testing revealed had been discharged from the decedent's gun.[3] On the basis of the evidence at the crime scene, the police concluded that two different guns had been used in the shooting outside of the cafe, and that the decedent had fired one shot during the altercation.

After an investigation, the police arrested the defendant approximately one month later. Recorded police interviews with the defendant occurred on November 20 and 21, 2015. At the start of the trial, the state filed an information charging the defendant with murder in violation of General Statutes § 53a-54, criminal possession of a firearm in violation of § 53a-217, carrying a pistol without a permit in violation of General Statutes § 29-35 and tampering with physical evidence in violation of § 53a-155. At the conclusion of the trial, the state withdrew the charge of carrying a pistol without a permit and filed a new long form information charging the defendant with the crimes of murder, criminal possession of a firearm and tampering with physical evidence. The jury returned not guilty verdicts on the murder charge and certain lesser included offenses,[4] and a guilty verdict on the criminal possession of a firearm and tampering with physical evidence charges.

Following the jury's verdict, the court granted the defendant's motion for a judgment of acquittal with respect to the charge of tampering with physical evidence. The court concluded that the state had failed to present sufficient evidence that the defendant had removed his gun from the crime scene with the intent to hinder a criminal investigation. The court then proceeded to the state's part B information and the jury found the defendant guilty of being a persistent serious felony offender. See General Statutes § 53a-40 (c). On February 9, 2018, the court imposed a total effective

sentence of twenty years incarceration. These appeals followed.

I

In the appeal in Docket No. AC 41168, the state claims that the court improperly granted the defendant's motion for judgment of acquittal with respect to the charge of tampering with physical evidence. Specifically, the state contends that it had produced sufficient evidence that the defendant had removed his gun from the crime scene with the intent to impair its availability in a criminal investigation by a law enforcement agency. We disagree.

The state charged the defendant with tampering with physical evidence in violation of § 53a-155 (a) (1) by fleeing from the crime scene with his gun.[5] On October 2, 2017, the defendant filed a motion seeking, in part, to dismiss the tampering charge. On October 17, 2017, the court heard arguments on this motion. The court denied that portion of the defendant's motion to dismiss "in essence" but noted that the defendant could raise arguments relating to the tampering with physical evidence charge at a later time.

Before the conclusion of the state's case, the parties stipulated that the defendant had been convicted of a felony prior to the events of October 18, 2015. As a result of this stipulation, the court instructed the jury[6] that the evidence of the prior conviction had been admitted for the limited purpose of establishing one of the elements of criminal possession of a firearm[7] and was not to be used for any other purpose. The court subsequently reiterated the limited purpose of the evidence of the defendant's prior felony conviction during its final instructions to the jury.[8]

On October 31, 2017, after the conclusion of the evidentiary phase of the trial, the defendant filed a motion for judgment of acquittal. See Practice Book § 42-40. The defendant asserted that the state had failed to produce evidence that he "altered, destroyed, concealed or removed a firearm with the purpose to impair its availability in a criminal investigation or official proceeding." During oral argument on the defendant's motion, the prosecutor noted that the requisite intent for tampering with physical evidence could be inferred from both the defendant's flight from the scene and the fact that, given his prior felony conviction, the defendant knew that possession of a firearm constituted evidence of criminal possession of a firearm. After hearing from the parties, the court reserved judgment on the motion until after the jury verdict. See Practice Book § 42-42.[9]

On November 6, 2017, the jury found the defendant guilty of criminal possession of a firearm and tampering with physical evidence. After excusing the jury, the court heard further argument from the parties regarding

the defendant's motion for judgment of acquittal. At the outset, the court questioned whether the state had met its burden with respect to the tampering with physical evidence charge. The court inquired whether, under these facts, where there had been a "shootout and a valid claim of self-defense [and] where [the state had claimed that the defendant] had a duty to retreat," the defendant's flight from the scene with his gun was sufficient for the jury to find that he had intended to impair the criminal investigation. The prosecutor responded that the jury could have found that the defendant had a dual intent in that he wanted to flee the scene and prevent the police from gaining possession of his firearm.

The court then rendered its oral decision on the motion for judgment of acquittal. "My view is [that] the only evidence from which a jury could infer an intent to remove the gun to impair a criminal investigation is his flight from the scene. Under the circumstances of this case, where there was inarguably a shootout, where the [decedent] fired his weapon, and the defendant fled the scene claiming self-defense and the state argued a duty to retreat, looking at all those circumstances, I conclude a jury could not reasonably find that the state has proven beyond a reasonable doubt that he took the gun with him to impair its availability in a subsequent criminal investigation. So for those reasons, I'm going to grant the motion for judgment of acquittal."

Two days later, the state filed a motion for permission to appeal the granting of the defendant's judgment for motion of acquittal. See General Statutes § 54-96; Practice Book § 61-6 (b).[10] The court granted the state's motion for permission to appeal on November 28, 2017. See generally *State* v. *Richard P.*, 179 Conn. App. 676, 678 n.1, 181 A.3d 107 (trial court granted state permission to appeal), cert. denied, 328 Conn. 924, 181 A.3d 567 (2018); *State* v. *Brundage*, 148 Conn. App. 550, 552, 87 A.3d 582 (2014) (same), aff'd, 320 Conn. 740, 135 A.3d 697 (2016).

We begin with the relevant legal principles and our standard of review. A motion for a judgment of acquittal must be granted if the evidence would not reasonably permit a finding of guilt. *State* v. *Nival*, 42 Conn. App. 307, 308, 678 A.2d 1008 (1996); see also *State* v. *Greene*, 186 Conn. App. 534, 549, 200 A.3d 213 (2018). In ruling on such a motion, "the trial court must determine whether a rational trier of fact could find the crime proven beyond a reasonable doubt." *State* v. *Nival*, supra, 309.

In the present case, the court concluded that the state had failed to prove, beyond a reasonable doubt, that the defendant removed the gun from the crime scene with the intent to impair its availability in a subsequent criminal investigation. "In reviewing a sufficiency of the evidence claim, we apply a [two part] test. First,

we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [trier of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In evaluating evidence, the trier of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict . . . . A jury can rely on both circumstantial and direct evidence when making its verdict. There is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . Because direct evidence of the accused's state of mind is rarely available . . . intent is often inferred from conduct . . . and from the cumulative effect of the circumstantial evidence and the rational inferences drawn therefrom." (Citations omitted; internal quotation marks omitted.) *State* v. *Mark*, 170 Conn. App. 241, 249–51, 154 A.3d 564, cert. denied, 324 Conn. 927, 155 A.3d 1269 (2017); see also *State* v. *Greene*, supra, 186 Conn. App. 549–50.

We now turn to the statutory language of the crime of tampering with physical evidence. See, e.g., *State* v. *Pommer*, 110 Conn. App. 608, 613, 955 A.2d 637 (review of any claim that evidence was insufficient to prove violation of criminal statute necessarily includes consideration of skeletal requirement of necessary elements that charged statute requires to be proved), cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). Section 53a-155 (a) provides in relevant part: "A person is guilty of tampering with or fabricating physical evidence if, believing that a criminal investigation conducted by a law enforcement agency or an official proceeding is pending, or about to be instituted, such person: (1) Alters, destroys, conceals or removes any record, document or thing with purpose to impair its verity or availability in such criminal investigation or official proceeding . . . ."[11] Our Supreme Court has set forth the elements of this crime. "The state . . . must establish that the defendant (1) believed that an official proceeding [or criminal investigation] was pending or about to be instituted, (2) discarded the evidence at issue, and (3) *acted with the intent to prevent the use of the evidence at an official proceeding* [*or criminal investigation*]." (Emphasis added.) *State* v. *Jordan*, 314 Conn. 354, 377, 102 A.3d 1 (2014); see also *State* v. *Mark*, supra, 170 Conn. App. 251.

On appeal, the state argues that the evidence was sufficient to prove that the defendant removed the gun

from the crime scene with the intent to impair its availability in the subsequent police investigation. It further contends that the jury could have inferred that the defendant, cognizant of his prior felony conviction, removed the gun for the purpose of avoiding the charge of criminal possession of a firearm. The defendant counters that his prior felony conviction had been admitted into evidence for the limited purpose of establishing an element of the crime of criminal possession of a firearm and could not be used for any other purpose. We agree with the defendant.

A brief review of the relevant case law will facilitate our analysis. In *State* v. *Foreshaw*, 214 Conn. 540, 542–43, 572 A.2d 1006 (1990), the defendant shot and killed the victim and then fled in her car. The police arrested the defendant a short time later and found a bullet on the floor of her vehicle. Id., 543. The defendant stated that she had thrown her gun out of the car window, and efforts to retrieve it proved to be unsuccessful. Id. At her criminal trial, the defendant admitted that she had discarded the gun while driving away from the site of the shooting "so that she would not be caught with it." Id. The jury found her guilty of murder, carrying a pistol without a permit, and tampering with physical evidence. Id., 541.

On appeal, the defendant challenged the sufficiency of the evidence with respect to the tampering with physical evidence charge. Id., 549. Although the defendant in *Foreshaw* did not focus on whether she had discarded the gun with the intent to make it unavailable for the subsequent official proceeding; see id., 550–51; our Supreme Court noted that she had testified to discarding the gun "so that she would not be caught with it." Id., 550. Thus, in *Foreshaw*, the defendant's own words provided evidence of her intent with respect to the unavailability of the gun in the subsequent proceeding.

In *State* v. *Jordan*, supra, 314 Conn. 354, our Supreme Court clarified certain aspects of its decision in *Foreshaw*. In *Jordan*, a witness observed an individual pull "aggressively" on the locked door of a closed bank while wearing a jacket, ski mask and gloves. Id., 358–59. After hearing the witness' report on his radio, a nearby police officer observed a likely suspect and called out to him. Id., 359. The suspect took off running. Id. During the ensuing chase, the suspect removed and discarded several items of clothing, including his jacket, sweatshirt, mask and gloves. Id., 359–60. The police eventually located and arrested the defendant, who was charged with various criminal offenses. Id., 360–63. The defendant was convicted of attempt to commit robbery in the third degree, conspiracy to commit robbery in the third degree and tampering with physical evidence. Id., 358.

On appeal, the defendant claimed that the evidence

was insufficient to support his conviction of tampering with physical evidence. Id., 376. In addressing the defendant's contention that *Foreshaw* had been decided incorrectly, our Supreme Court observed that § 53a-155 applies to some, but not all, attempts to discard evidence that occur during a police investigation. Id., 382.[12] Furthermore, it noted that "it is not the existence of an investigation that is key but, rather, whether the defendant believes an official proceeding is pending or probable. . . . This analysis ensures that the focus of the inquiry is on the culpability of the actor, rather than on external factors wholly unrelated to [the actor's] purpose of subverting the administration of justice." (Internal quotation marks omitted.) Id., 383.

In *Jordan*, our Supreme Court determined that the jury could not reasonably have concluded that, at the time the defendant discarded the evidence, he believed that an official proceeding against him was probable. Id., 385. "Instead, the only reasonable inference from the facts . . . is that the defendant discarded his clothing to prevent its use in an investigation in order to escape detection and avoid being arrested by the pursuing police officer. There is no evidence that when the defendant discarded the clothing he believed that the police officer had any information, other than the clothing, linking him to the attempted bank robbery." Id., 388–89.

Unlike in *Jordan*, here, the removal of evidence for the purpose of impairing its availability in a criminal investigation by law enforcement falls within the ambit of § 53a-155. See note 12 of this opinion. Nevertheless, the state failed to produce any evidence that, at the time the defendant departed the crime scene, he removed the gun with the intent to impair its availability in a subsequent criminal investigation. Cf. *State* v. *Mark*, supra, 170 Conn. App. 254 (witness testified that defendant was nervous and had wanted to return to crime scene to dispose of rock used to kill victim). The evidence indicates that the defendant shot the decedent, who fell to the ground and returned fire. The defendant then left the scene. There is no additional evidence that, when he left the scene of the shooting, the defendant took the gun with the intent to prevent its use in the subsequent police investigation.

The state argues that, in addition to his flight from the scene of the shooting, the jury could have relied on the defendant's prior felony conviction to satisfy the element that he had removed the gun with the intent to impair its availability in an investigation by law enforcement. The state maintains that the evidence of the defendant's flight, combined with his prior felony conviction, supported a finding that the defendant had removed the gun from the scene to avoid a charge of criminal possession of a firearm, and therefore tampered with physical evidence.

The state's argument, however, overlooks the limited purpose for which the defendant's prior felony conviction had been admitted into evidence. The parties and the court addressed the admissibility of the defendant's prior felony conviction. The court indicated that it would provide the jury with "a cautionary instruction . . . that the felony conviction *is only to be used for that count* [*of criminal possession of a firearm*] *and for no other*. It's not to be used to infer bad character or criminal propensity on the part of the defendant." (Emphasis added.) When the parties' stipulation regarding the defendant's prior felony conviction was admitted into evidence and read to the jury, the court limited its use to the charge of criminal possession of a firearm. The court repeated that limitation during its charge to the jury. At no point did the state object to the limited purpose for which the evidence of the defendant's prior felony conviction could be used.

"Evidence which is offered and admitted for a limited purpose only, and the facts found from such evidence, cannot be used for another and totally different purpose. *O'Hara* v. *Hartford Oil Heating Co.*, 106 Conn. 468, 473, 138 A. 438 (1927)." (Internal quotation marks omitted.) *Access Agency, Inc.* v. *Second Consolidated Blimpie Connecticut Realty, Inc.*, 174 Conn. App. 218, 229, 165 A.3d 174 (2017); see also *Damick* v. *Planning & Zoning Commission*, 158 Conn. 78, 80–81, 256 A.2d 428 (1969) (when court used evidence and testimony for purposes beyond limited ones for which it had permitted admission into evidence, such misuse was impermissible); see generally Conn. Code Evid. § 1-4. Given the state's agreement to use the defendant's prior felony conviction only for a limited purpose, we reject its efforts to now apply that evidence to the tampering with physical evidence charge.[13] We conclude, therefore, that the state presented insufficient evidence regarding the defendant's intent when he departed from the scene of the shooting. The evidence regarding his prior felony conviction could not be used to establish the element of intent in the tampering with physical evidence charge. For these reasons, we conclude that no reasonable trier of fact could have found the defendant guilty of this charge, and the trial court properly granted the defendant's motion for judgment of acquittal as to the charge of tampering with physical evidence.

II

In the appeal in Docket No. AC 41644, the defendant claims that his statements to the police had been obtained after a violation of the prophylactic rule established by our Supreme Court in *State* v. *Purcell*, supra, 331 Conn. 318, and, therefore, the court should have excluded his statements from evidence. The defendant also contends that the court abused its discretion and violated his constitutional rights by admitting into evidence certain inculpatory portions of his police inter-

view and excluding related contextual portions. The state counters, inter alia, that the defendant did not make an ambiguous request for counsel during his interview with the police and, therefore, the *Purcell* rule did not apply. Additionally, the state maintains that the court did not abuse its discretion or violate the defendant's constitutional rights with respect to its rulings regarding the admissibility of portions of the defendant's police interview. We agree with the state.

On November 20, 2015, approximately one month after the shooting, the police took the defendant into custody pursuant to an arrest warrant. The defendant was arrested in New Haven and then transported to Waterbury. During a brief custodial interview in the detective bureau, the defendant unambiguously asserted his right to have a lawyer present, and Stephen Brownell, a Waterbury police detective, ended the interview.

The defendant remained in custody overnight at the Waterbury police station. The next day, he informed Ricardo Viera, a Waterbury police officer, that he wanted to speak with Brownell. The defendant's affirmative request was relayed to Brownell, who returned to the police station to speak with the defendant on November 21, 2015. During this second interview, Brownell informed the defendant of his *Miranda* rights.[14] The defendant expressly stated that he understood and waived these rights. During the course of this second interview, the defendant admitted to being outside the cafe at the time of the shooting.

On October 2, 2017, the defendant filed a motion to suppress the statements he made to law enforcement officers. The defendant claimed that these statements were made (1) without a valid waiver of his state and federal rights against self-incrimination, (2) involuntarily, in violation of state and federal rights to due process and (3) in violation of his right to counsel. The defendant filed a memorandum of law in support of the motion to suppress approximately two weeks later.

On October 17, 2017, the court held a hearing on the defendant's motion to suppress. For purposes of the hearing, the state conceded that the defendant was in custody and subject to interrogation. The parties also agreed to focus on the November 21, 2015 interview. The court indicated that it had watched the video recordings of both interviews. After hearing from the state's witnesses, the court orally denied the defendant's motion to suppress.

The court found that the defendant had asserted his right to have counsel present during the first interview,[15] at which time Brownell terminated the interrogation.[16] The next day, the defendant affirmatively requested to speak to Brownell, which led to the second interview. The court expressly found that, during the second inter-

view, the defendant was informed of, understood and waived his *Miranda* rights. The court noted that, during the second interview, the defendant had expressed dissatisfaction that a lawyer had not come to see him following the conclusion of the first interview. The court, relying on *Edwards* v. *Arizona*, 451 U.S. 477, 101 S. Ct. 1880, 68 L. Ed. 2d 378 (1981), concluded that the defendant had initiated further communication with the police,[17] and then had knowingly, intelligently and voluntarily waived his *Miranda* rights. Accordingly, it denied the defendant's motion to suppress.

On the last day of the state's case, the prosecutor, outside the presence of the jury, sought to have portions of the video recording of the defendant's second interview admitted into evidence. Defense counsel, who had not been provided with advance notice of the specific excerpts the state sought to have admitted, noted that he likely would ask that certain additional portions also be admitted into evidence to provide the jury with context. After viewing the state's proffer, defense counsel offered several video clips for admission into evidence. The court admitted only the excerpt of the interview offered by the state, in which the defendant admitted to being present outside of the cafe on the night of the shooting.

### A

The defendant first claims that his statements to the police during his second interview violated the prophylactic rule set forth by our Supreme Court in *State* v. *Purcell*, supra, 331 Conn. 318, and, therefore, the court should have excluded the statements from evidence. The defendant argues that he made an equivocal or ambiguous request for counsel at the beginning of the second interview and therefore the police should have confined any further questioning to narrow inquiries designed to clarify the defendant's desire for counsel, as required by *Purcell*. The state counters that the defendant's remarks did not constitute an ambiguous request for counsel, and, therefore, the police's subsequent questioning was not limited to a clarification of the desire for counsel, and that any error was harmless beyond a reasonable doubt. After a careful review of the record and our Supreme Court's decision in *Purcell*, we conclude that the defendant's comment did not amount to an equivocal or ambiguous request for counsel, and, therefore, the defendant's claim fails.

The following additional facts are necessary for our analysis. Brownell first interviewed the defendant on November 20, 2015. This interview occurred after the defendant's arrest and transportation from New Haven to Waterbury. At the outset, Brownell informed the defendant that, before discussing the incident that had led to his arrest, the defendant had to be made aware of, and waive, certain rights.[18] The defendant stated that he was willing to talk to Brownell, but requested that

he be permitted to telephone his father. After further conversation, Brownell again attempted to provide the defendant with his *Miranda* rights. After reading some of the *Miranda* rights aloud, the defendant again requested to make a telephone call. The defendant repeated that he was willing to speak with Brownell and added that he wanted a lawyer present.[19] Brownell asked if the defendant would prefer to have a lawyer and the defendant responded: "I'd rather have a lawyer present." At this point, Brownell ceased the interrogation of the defendant.

The next day, the defendant reinitiated communication with the police by affirmatively requesting to speak with Brownell, whom he described as the detective "controlling the case." After returning to the police station, Brownell commenced the second interview by attempting to obtain the defendant's waiver of his *Miranda* rights. The defendant repeatedly expressed his concerns about being recorded and for his safety.

After about fifteen minutes, the following colloquy occurred:

"[Brownell]: Who did you, who did you reach out earlier to . . . say that you wanted to speak with me again? Did you reach out to somebody?

"[The Defendant]: Ye—couple of people.

"[Brownell]: Who was it? Officers downstairs?

"[The Defendant]: Mhhm.

"[Brownell]: Were they wearing like blue uniforms, like uniformed officers wear? Was that down in the cell block? You just—what did you say to them, that you wanted to speak with who?

"[The Defendant]: The controlling officer, that's all.

"[Brownell]: What's that?

"[The Defendant]: The controlling officer.

"[Brownell]: One of the controlling officers? Did you ask to speak with detectives from yesterday? Anything like that?

"[The Defendant]: Yeah, I said controlling the case.

"[Brownell]: Controlling the case?

"[The Defendant]: Cuz I just want to know like— it ain't—

"[Brownell]: Okay. *So you reached out to them correct? Is that fair to say, that you said you wanted to come back up here and speak with us? Okay. What changed your mind from yesterday when you said you didn't want to speak with us? Did you have some time to think about things?*

"[The Defendant]: *When the lawyer ain't come see me—*

"[Brownell]: No?

"[The Defendant]: *The lawyer ain't come see me, so now I feel like I'm being left for dead, like—*

"[Brownell]: *Shitty feeling.*

"[The Defendant]: Especially when I ain't—ain't nothing going—besides somebody probably saying something—I did something—like that's . . . ." (Emphasis added.)

After the defendant explained why he had changed his mind, Brownell made efforts to read to the defendant his *Miranda* rights. He also explained the various ways in which they could discuss the incident, as well as the parameters of such a discussion. After several attempts, Brownell read the defendant his rights. The defendant verbally acknowledged that he understood them and waived these rights. Brownell then proceeded to interview the defendant about the shooting at the cafe. Subsequently, in denying the defendant's motion to suppress, the court found that he had knowingly, intelligently and voluntarily waived his rights during the second interview.[20]

On appeal, the defendant contends that his response to Brownell's inquiry as to why he had changed his mind about speaking with the police constituted an equivocal or ambiguous request for counsel to be present at the second interview. At the time of the motion to suppress, and for purposes of the defendant's federal constitutional rights, this issue was controlled by *Davis* v. *United States*, 512 U.S. 452, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). In that case, the United States Supreme Court noted the rule that requires the police to cease questioning a suspect after counsel has been requested until either a lawyer is actually present or the suspect reinitiates the conversation with law enforcement. Id., 458; see also *State* v. *Purcell*, supra, 331 Conn. 331. "The applicability of the rigid prophylactic rule . . . requires courts to determine whether the accused *actually invoked* his right to counsel. . . . [I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of the questioning." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Davis* v. *United States*, supra, 458–59. Stated differently, "the suspect must unambiguously request counsel. . . . Although a suspect need not speak with the discrimination of an Oxford don . . . he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." (Citations omitted; internal quotation marks omitted.) Id., 459.

During the pendency of the defendant's appeal, how-

ever, our Supreme Court issued its decision in *State* v. *Purcell*, supra, 331 Conn. 318. In that case, the defendant made the following statements during a custodial interrogation: "See, if my lawyer was here . . . then . . . we could talk. That's, you know, that's it. . . . I'm supposed to have my lawyer here. You know that." (Internal quotation marks omitted.) Id., 334. On appeal, our Supreme Court concluded that these statements "were not the type of expression necessary under *Davis* to require interrogation to cease" as they did not constitute an unambiguous request for counsel. Id., 341.

The court then considered whether article first, § 8, of the Connecticut constitution required the police to stop and clarify an ambiguous or equivocal request for the presence of counsel. Id. Specifically, the court described the issue as "whether to adopt an additional layer of prophylaxis to prevent a significant risk of deprivation of those vital constitutional rights protected under *Miranda*." Id., 342. Our Supreme Court observed that it had "endorsed the stop and clarify rule and followed it for more than a decade prior to *Davis*. See *State* v. *Anderson*, 209 Conn. 622, 627–28, 553 A.2d 589 (1989); *State* v. *Barrett*, [205 Conn. 437, 448, 534 A.2d 219 (1987)]; *State* v. *Acquin*, [187 Conn. 647, 674–75, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983)]." *State* v. *Purcell*, supra, 331 Conn. 347. Ultimately, the court concluded that the standard set forth in *Davis* failed to safeguard adequately the right to counsel during a custodial interrogation under our state constitution. Id., 361–62. "We therefore hold that, consistent with our precedent and the majority rule that governed prior to *Davis*, our state constitution requires that, *if a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel. . . .* Interrogators confronted with such a situation alternatively may inform the defendant that they understand his statement(s) to mean that he does not wish to speak with them without counsel present and that they will terminate the interrogation. In either case, if the defendant thereafter clearly and unequivocally expresses a desire to continue without counsel present, the interrogation may resume." (Citation omitted; emphasis added; internal quotation marks omitted.) Id., 362. As a corollary to this rule, however, if the suspect makes statements that cannot be construed as a request for counsel, then the interrogation may continue, subject to any other applicable constitutional limitations.

The trial in the present case predated our Supreme Court's decision in *Purcell*. Nevertheless, the parties agree, and we concur, that because this appeal was pending when *Purcell* was released on March 29, 2019, the new rule set forth therein applies to this matter. See *State* v. *Dickson*, 322 Conn. 410, 450, 141 A.3d 810

(2016) (new constitutional rules of criminal procedure must be applied in future trials and cases pending on direct review), cert. denied, U.S. , 137 S. Ct. 2263, 198 L. Ed. 2d 713 (2017); *Morrison* v. *Sentence Review Division*, 84 Conn. App. 345, 351 n.6, 853 A.2d 638 (same), cert. denied, 272 Conn. 908, 863 A.2d 701 (2004).

The dispositive question, therefore, is whether the exchange between the defendant and Brownell constituted an ambiguous or equivocal request so as to trigger the requirement of *Purcell* that any further questioning was limited to clarifying whether the defendant, in fact, wanted to have an attorney present.

We are mindful that "[i]nvocation [of the right to counsel] and waiver [of said right] are entirely different inquiries . . . ." (Internal quotation marks omitted.) *State* v. *Rollins*, 245 Conn. 700, 704, 714 A.2d 1217 (1998); see also *State* v. *Barrett*, supra, 205 Conn. 440–41 (noting analysis comprised of whether defendant had in fact invoked right to counsel and whether he had waived right to counsel). In *Davis* v. *United States*, supra, 512 U.S. 459, the United States Supreme Court identified the test for an ambiguous or equivocal invocation of the right to counsel as whether the defendant's reference to an attorney would lead a reasonable officer, under the circumstances, to understand that the defendant might be requesting counsel. See also *State* v. *Purcell*, supra, 331 Conn. 333 (noting test from majority opinion in *Davis*). Indeed, in considering the facts of *Purcell* under the federal constitution, our Supreme Court specifically recognized that a reasonable police officer could have interpreted the defendant's statements as the invocation of the right to counsel, but that his statements were reasonably amenable to a different interpretation. Id., 339–40. We therefore will consider whether, under the circumstances, a reasonable officer could have interpreted the defendant's exchange with Brownell during the second interview as an invocation of the right to counsel. See id., 333–39; see also *State* v. *Anonymous*, 240 Conn. 708, 722–23, 694 A.2d 766 (1997).

After the defendant had reinitiated communication with the police, Brownell conducted the second interview. Brownell informed the defendant that they had to "go over" his rights. The defendant indicated that he did not want to be recorded, and he wanted to regain his freedom. The two men also addressed the defendant's concern for his safety and his reluctance to identify certain individuals.[21] After further discussion, the defendant stated that he had changed his mind about speaking to Brownell because a lawyer had not come to see him and that he had felt "left for dead . . . ." Brownell responded with "[s]hitty feeling." After further discussion, the defendant was read his rights, which he acknowledged and waived.

After a careful consideration of the facts and circumstances, we conclude that the defendant's explanation as to why he had changed his mind about speaking with Brownell did not constitute an ambiguous or equivocal request for counsel. Our Supreme Court has observed "that not every reference to an attorney during custodial interrogation is an invocation of the right to counsel." *State* v. *Shifflett*, 199 Conn. 718, 737, 508 A.2d 748 (1986); see also *State* v. *Wilson*, 199 Conn. 417, 443, 513 A.2d 620 (1986) (fleeting reference to attorney, considered in context, may not amount to invocation of right to counsel depending on circumstances), overruled in part on other grounds by *State* v. *McCoy*, 331 Conn. 561, 586–87, 206 A.3d 725 (2019). Here, the defendant explained to Brownell that he changed his mind and agreed to speak with him about the shooting because "the lawyer ain't come see me . . . ." A statement made by a suspect in a custodial interrogation, even containing the word "attorney" or "lawyer," need not necessarily fall within the sphere of a request, clear or ambiguous, for counsel. Indisputably, the statement at issue did not constitute an "affirmative statement of present intent," which has been held to constitute a clear, unequivocal invocation of the right to counsel. *State* v. *Purcell*, supra, 331 Conn. 334–35. More importantly, it did not contain one or more conditional or hedging terms relating to the desire to have counsel present, which have been deemed ambiguous or equivocal invocations of that right. Id., 335–36.

Our conclusion that the defendant's explanation for speaking to the police would not cause a reasonable officer to construe it as an ambiguous request for counsel is supported by the circumstances of the two interviews. At the outset of the second interview, the defendant indicated that he did not want to be recorded and was worried about his safety. The defendant expressed his reluctance to provide names of individuals to Brownell and inquired as to whether other law enforcement agencies had been involved in this matter. Those agitations caused him to interrupt Brownell's efforts to read the defendant his *Miranda* rights. Prior to his explanation for changing his mind, which occurred approximately fifteen minutes into the second interview, the defendant said nothing that could remotely be construed as a request for counsel. Further, the defendant, who Brownell knew to have been involved in previous criminal matters, unambiguously had invoked his right to counsel the previous day which resulted in the termination of the first interview. Given the circumstances and the language used by the defendant during his second exchange with Brownell explaining his reason for choosing to speak about the shooting, there was nothing that would have alerted a reasonable officer that the defendant was requesting counsel. Accordingly, we conclude that his *Purcell* claim must fail.

The defendant next claims that the court abused its discretion and violated his constitutional rights by admitting into evidence certain inculpatory portions of his statement while excluding related contextual portions. Specifically, he argues that "the court permitted the prosecution to create a misleading impression for the jury by allowing the state to introduce inculpatory portions of the defendant's statements while omitting portions wherein he denied involvement in the shooting incident." The defendant further claims to have suffered both evidentiary and constitutional harm and therefore is entitled to a new trial. We are not persuaded by the defendant's claims.

The following additional facts are necessary for the resolution of these claims. On October 27, 2017, the prosecutor informed the court of his intention to offer portions of the defendant's recorded interview with Brownell for admission into evidence. The first portion contained Brownell showing the defendant a photograph from the surveillance video taken outside of the cafe on the night of the shooting and the defendant identifying himself in the photograph. The state also sought to have this photograph admitted into evidence. Defense counsel objected to the state's proffer and argued that additional portions of the recording should be admitted into evidence. These portions included the defendant's identification of the shooter as a man dressed in all white clothing.

The court noted that defense counsel sought to have these additional portions of the defendant's interview with Brownell admitted into evidence pursuant to § 1-5 of the Connecticut Code of Evidence.[22] Defense counsel explained that the defendant's acknowledgment of his presence outside of the cafe at time of the shooting would be taken out of context by the jury if his identification of the shooter as the man dressed in all white clothing also was not admitted into evidence. The court noted that the defendant's "motivation as to why he's putting himself at the scene is not necessary to understand [the fact that he has identified himself as being present] at the scene."[23] Defense counsel conceded that, in the portion of the video that the state sought to have admitted into evidence, the defendant had identified himself in the photograph taken at the scene on the night of the shooting. After hearing further argument, the court declined to admit into evidence the additional portions of the recorded interview of the defendant by Brownell.

The court informed the parties that it would admit into evidence a twenty-three second portion of the defendant's recorded interview with Brownell. During this excerpt, identified as exhibit 62A, Brownell showed the defendant a photograph and asked if he was

depicted in that photograph. The defendant examined the photograph and responded in the affirmative. Brownell then inquired whether the defendant was "next to the dude in white?" The defendant again responded in the affirmative.

Brownell testified that he had interviewed the defendant for approximately three hours on November 21, 2015. He further stated that this interview had been audio and video recorded. The court admitted into evidence the short clip of the police interview conducted by Brownell, identified as exhibit 62A, and it was played for the jury. The court also admitted into evidence the photograph that Brownell showed to the defendant during the second interrogation.

Following the jury verdict, the defendant filed a motion for a new trial on November 13, 2017. Therein, the defendant again claimed that the admission of exhibit 62A was misleading and prejudicial. The court denied the defendant's motion for a new trial.

On appeal, the defendant claims both evidentiary and constitutional error with respect to the court's ruling regarding exhibit 62A. With respect to the former claim, the defendant contends that the court abused its discretion in admitting exhibit 62A and in excluding the portions of the police interview in which he identified the shooter as the man dressed in all white in violation of § 1-5 of the Connecticut Code of Evidence.

Before addressing the specifics of this claim, we set forth our standard of review. "To the extent a trial court's [ruling regarding] admission of evidence is based on an interpretation of the [Connecticut] Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no judgment call by the trial court . . . . We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *State v. Norman P.*, 169 Conn. App. 616, 628, 151 A.3d 877 (2016), aff'd, 329 Conn. 440, 186 A.3d 1143 (2018); see also *State v. Rivera*,      Conn.      ,      ,      A.3d      (2020).

In the present case, the issue is whether the court properly admitted and excluded the various portions of the police interview pursuant to § 1-5 of the Connecticut Code of Evidence and therefore we apply the abuse of discretion standard of review. Pursuant to that standard, "[t]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial

court's ruling . . . and . . . upset it [only] for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Brett B.*, 186 Conn. App. 563, 600, 200 A.3d 706 (2018), cert. denied, 330 Conn. 961, 199 A.3d 560 (2019); see also *State* v. *Garcia*, 299 Conn. 39, 56–57, 7 A.3d 355 (2010).

Section 1-5 (b) of the Connecticut Code of Evidence "applies to statements, and its purpose is to ensure that statements placed in evidence are not taken out of context. . . . This purpose also demarcates the rule's boundaries; a party seeking to introduce selected statements under the rule must show that those statements are, in fact, relevant to, and within the context of, an opponent's offer and, therefore, are part of a single conversation. . . . *State* v. *Castonguay*, 218 Conn. 486, 497, 590 A.2d 901 (1991). . . . [This] rule logically extends to written and recorded statements. Thus, like subsection (a), subsection (b)'s use of the word statement includes oral, written and recorded statements. In addition, because the other part of the statement is introduced under subsection (b) for the purpose of putting the first part into context, the other part need not be independently admissible. Conn. Code Evid. § 1-5, commentary, subsection (b) . . . ." (Internal quotation marks omitted.) *Cousins* v. *Nelson*, 87 Conn. App. 611, 617–18, 866 A.2d 620 (2005); see generally C. Tait & E. Prescott, Connecticut Evidence (5th Ed. 2014) § 1.28.2, pp. 89–90.

In *State* v. *Norman P.*, supra, 329 Conn. 459, our Supreme Court defined the term "context" as "[t]he weaving together of words in language . . . [t]he part or parts of a written or spoken passage preceding or following a particular word or group of words and so intimately associated with them as *to throw light upon their meaning* . . . ." (Emphasis in original; internal quotation marks omitted.) It also set forth the following analytical pathway to determine whether a statement had been taken out of context so as to require the admission into evidence of the relevant additional sections. "In accordance with these principles, when a portion of a statement introduced by a party has been taken out of context such that it distorts the meaning of the entire statement and could mislead the jury, § 1-5 (b) of the Connecticut Code of Evidence requires that the relevant remainder be admitted . . . . We have relied on a useful inquiry in determining whether § 1-5 (b) requires the admission of a remainder of a statement: does the remainder 'alter the context' of the already introduced portion of the statement? *State* v. *Castonguay*, [supra, 218 Conn. 497]. The nature of the question suggests a practical approach to applying § 1-5 (b): identify which portions of the statement were initially introduced into evidence, set forth the argument of the party proffering the remainder as to how the partial introduction distorts the meaning of the whole, then juxtapose that initial offering with the

remainder. If the addition of the remainder would alter the meaning of the initial offering—or, in other words, would demonstrate that the initial portion was taken out of context—then § 1-5 (b) requires that the remainder be admitted into evidence. This court followed precisely this approach in [*State* v. *Jackson*, 257 Conn. 198, 214, 777 A.2d 591 (2001)], in which the court first considered which portions of the statement had been admitted, identified the defendant's argument as to why the remainder was necessary to provide context, then juxtaposed the initial offering with the remainder of the statement and concluded that the original portions had not distorted the meaning of the entire statement." *State* v. *Norman P.*, supra, 329 Conn. 460.

Applying this analysis to the facts of the present case, we conclude that the court did not abuse its discretion with respect to its evidentiary rulings. Here, the court determined that in exhibit 62A the defendant identified himself in the photograph during his interview with Brownell. The additional information that the defendant sought to have introduced into evidence included the defendant's identification of the man in all white as the shooter. The evidence proffered did not change or alter the fact that the defendant had made this self-identification that placed him at the scene of the shooting. Stated differently, the defendant's identification of the individual in white clothing was not so intimately associated so as to "throw light" on the fact that the defendant identified himself in the photograph of the outside of the cafe on the night of the shooting. See *State* v. *Norman P.*, supra, 329 Conn. 459. The defendant's evidentiary claims, therefore, must fail.

The defendant also alludes to claims of constitutional error regarding the court's admission of exhibit 62A and its exclusion of the evidence proffered by the defendant. Specifically, he asserts that the court's rulings amounted to violations of due process and the right to present a complete defense. After a careful review of the defendant's brief, we conclude that he has failed to establish violations of his constitutional rights. Having determined that the court properly admitted exhibit 62A into evidence and that § 1-5 of the Connecticut Code of Evidence did not require the admission of the evidence offered by the defendant regarding his identification of the man dressed in white as the shooter, the defendant's declarations of constitutional error do not persuade us that constitutional violations occurred.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] During the autopsy, a single nine millimeter bullet was removed from the decedent's back.

[2] James Gill, the forensic pathologist who performed the October 19, 2015 autopsy of the decedent, testified that the cause of death was a gunshot wound to the trunk of the torso. Gill further opined that the decedent would have been able to fire his gun after sustaining this gunshot wound.

[3] Rainone explained to the jury that a cartridge is often called a "live

round" and consists of the canister, gun powder and the bullet.

[4] The court charged the jury on the lesser included offenses of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a, manslaughter in the second degree with a firearm in violation of General Statutes § 53a-56a and criminally negligent homicide in violation of General Statutes § 53a-58.

[5] The operative information charged the defendant as follows: "AND FURTHER THAT THE SAID [defendant] did commit the crime of TAMPERING WITH PHYSICAL EVIDENCE in violation of . . . § 53a-155 (a) (1) in that on or about October 18, 2015, at approximately 1:13 a.m., at or near [the cafe], that said [defendant] did, believing that a criminal investigation conducted by a law enforcement agency was about to be instituted, remove a thing with purpose to impair its availability in such criminal investigation; to wit [the defendant] fled the scene of the shooting with the gun he used to kill [the decedent]."

[6] Specifically, the court instructed the jury as follows: "Ladies and gentleman, I'll be giving full instructions as of the close of evidence, but as you just heard, the state has offered evidence that the defendant has been previously convicted of a felony. That evidence is not being admitted to show that the defendant has bad character or propensity to commit crimes. It's been admitted for a limited purpose only, that limited purpose is to establish an element of the crime of criminal possession of a firearm. And you're to use it for that purpose only. And I'll be providing you with additional instructions later in my charge to you."

[7] General Statutes § 53a-217 (a) provides in relevant part: "A person is guilty of criminal possession of a firearm . . . when such person possesses a firearm . . . and (1) had been convicted of a felony committed prior to, on or after October 1, 2013 . . . ." See generally *State* v. *Harris*, 183 Conn. App. 865, 871 n.9, 193 A.3d 1223, cert. denied, 330 Conn. 918, 193 A.3d 1213 (2018).

[8] The court instructed the jury as follows: "You will recall that some testimony and evidence were admitted during the course of this trial for a limited purpose only. Any testimony or evidence which I identified as being received for a limited purpose, you will consider only as it relates to the limited issue for which it was allowed. You shall not consider such testimony and evidence in finding any other facts or as to any other issue.

* * *

"Any evidence in this case that the defendant has previously been convicted of a felony has been admitted for a limited purpose, that purpose being to establish the second essential element of this offense. *The evidence may not be used for any other purpose.*" (Emphasis added.)

[9] Practice Book § 42-42 provides that "[i]f the motion [for judgment of acquittal] is made at the close of all the evidence in a jury case, the judicial authority may reserve decision on the motion, submit the case to the jury, and decide the motion either before the jury returns a verdict or after it returns a verdict of guilty or after it is discharged without having returned a verdict."

[10] General Statutes § 54-96 provides: "Appeals from the ruling and decisions of the Superior Court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the Supreme Court or to the Appellate Court, in the same manner and to the same effect as if made by the accused."

Practice Book § 61-6 (b) provides in relevant part: "The state, with permission of the presiding judge of the trial court and as provided by law, may appeal from a final judgment."

[11] Effective October 1, 2015, "[§] 53a-155 was amended . . . to add that one may be guilty of tampering during a criminal investigation or when a criminal proceeding is about to commence." *State* v. *Stephenson*, 187 Conn. App. 20, 33 n.9, 201 A.3d 427, cert. granted on other grounds, 331 Conn. 914, 204 A.3d 702 (2019); see also *State* v. *Mark*, supra, 170 Conn. App. 243 n.2.

[12] Our Supreme Court's decision in *State* v. *Jordan*, supra, 314 Conn. 354, was released on November 4, 2014, approximately eleven months before § 53a-155 was amended to include criminal investigations.

[13] In its reply brief, the state relies on *State* v. *Gradzik*, 193 Conn. 35, 475 A.2d 269 (1984). In that case, the defendant had been convicted of burglary in the third degree and, on appeal, challenged the sufficiency of the evidence that he entered the building. Id., 36. At the close of the state's evidence, he moved for a judgment of acquittal on the basis that the state had failed to prove that the defendant entered the cellar door of the building. Id., 37. The court denied the defendant's motion. Id. In its charge, the court instructed

that in order to find the defendant guilty, the jury had to find that the defendant had entered the cellar. Id., 37–38.

On appeal, the defendant claimed that the court's charge had "narrowed the issue to entry into the cellar [and because] proof of the defendant's presence in the hatchway is not sufficient for conviction," his conviction could not stand. Id., 38. Our Supreme Court first noted that, contrary to the trial court's instructions to the jury, the defendant's presence in the hatchway was sufficient for a conviction of burglary in the third degree. Id. It then explained: "The trial court cannot by its instruction change the nature of the crime charged in the information. . . . The substituted information charged the defendant with burglary in the third degree which could have been proved by the defendant's unlawful entry into the hatchway. Though the instruction incorrectly limited the proof necessary for a conviction, on review of a sufficiency of the evidence claim this court looks to see if the evidence supports the verdict on the crime charged. As discussed earlier, we hold that it does." (Citation omitted.) Id., 38–39.

We conclude that *State* v. *Gradzik*, supra, 193 Conn. 35, is distinguishable from the present case. In *Gradzik*, our Supreme Court concluded that the trial court's erroneous instruction could not limit the elements of the crime of burglary in the third degree so as to require the state to prove entry into the cellar. The evidence of the defendant's entry into the hatchway was sufficient to support his conviction, despite that improper instruction by the court. In the present case, the agreement of the parties limited the use the defendant's prior felony conviction and the court instructed the jury accordingly. The state's reliance on *Gradzik*, therefore, is misplaced.

[14] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[15] In *Miranda* v. *Arizona*, supra, 384 U.S. 469–73, the United States Supreme Court held that "a suspect subject to custodial interrogation has the right to consult with an attorney and to have counsel present during questioning, and that the police must explain this right to him before questioning begins." (Internal quotation marks omitted.) *State* v. *Purcell*, supra, 331 Conn. 330; see also *State* v. *Anonymous*, 240 Conn. 708, 720–21, 694 A.2d 766 (1997) (right of accused to have attorney present during custodial interrogation constitutes prophylactic rule to protect constitutional rights).

[16] In *Smith* v. *Illinois*, 469 U.S. 91, 98, 105 S. Ct. 490, 83 L. Ed. 2d 488 (1984), the United States Supreme Court acknowledged the "bright-line rule that *all* questioning must cease after an accused requests counsel." (Emphasis in original; internal quotation marks omitted.) See also *State* v. *Purcell*, supra, 331 Conn. 331; *State* v. *Rollins*, 245 Conn. 700, 704–706, 714 A.2d 1217 (1998); see generally annot., 83 A.L.R. 4th 454 § 2 [a] (1991).

[17] "We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*" (Emphasis added.) *Edwards* v. *Arizona*, supra, 451 U.S. 484–85; see also *State* v. *Hafford*, 252 Conn. 274, 290, 746 A.2d 150 (after suspect requests counsel, further conversations between police and suspect do not violate *Miranda* if initiated by suspect), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000); *State* v. *Mercer*, 208 Conn. 52, 67–68, 544 A.2d 611 (1988) (same).

[18] For example, Brownell stated: "But if we wanna talk about the incident, if you wanna know why you're here, the things that happened, what I know, what people have been saying about you, at the bare minimum you have to understand these rights, you gotta read them out loud, and say that you understand them and you wanna speak with me."

[19] Specifically, the defendant stated: "Yes, I do [want to speak with Brownell], but I want to make a phone call, and my father and—and my girl, have her bring a lawyer—can I speak with you with a lawyer?"

[20] During the hearing on the defendant's motion to suppress, defense counsel argued that the police had a legal obligation "to explain to [the defendant] the fact he need not sit here feeling like he's left for dead, that arrangement can, in fact, be made to secure an attorney here and now. And not just this nebulous, you know, this if you can't one will be provided to you, but explaining. A guy who has expressed, doesn't have one, wants one and is feeling left for dead—and frustrated . . . ."

[21] During the argument on the motion to suppress, the court noted: "I, having viewed the videotape, I agree with [the prosecutor] that the hemming and hawing was not about [the defendant's] concern about whether he was waiving his rights, it's whether it was being recorded, whether someone

else would find out what he was saying to the police because he had some desire to give information about other criminal activity he was aware of and he didn't want those people to know that he was talking to the police, that it was not in any way an uncertainty in his mind as to whether he wanted to talk to the police, but whether there would be a record of what he said, you know, written or recorded record of what he said to the police and I so find."

[22] Section 1-5 (b) of the Connecticut Code of Evidence provides: "When a statement is introduced by a party, another party may introduce any other part of the statement, whether or not otherwise admissible, that the court determines, considering the context of the first part of the statement, ought in fairness to be considered with it."

[23] The court also indicated that defense counsel was attempting to minimize the effect of the defendant's self-identification.

———————————————